JONES, PLAINTIFF AND APPELLEE, v. TORRELLAS ET AL.,
DEFENDANTS (TEXIDOR, APPELLANT).

APPEAL from the District Court of San Juan in an Action
for the Acknowledgment of Annuities and Recovery of
Interest.

No. 2002.—Decided February 12, 1920.

ANNUITY—PUBLIC INSTRUMENT.—Neither the old nor the present system of laws
makes it an indispensable requisite for the creation of an annuity that it
be granted in a public instrument; therefore the principle of law for de-
termining the existence of an annuity is that ''in whatever way it may ap-
pear that a person·wishes to bind himself, he is bound.''

ID.—CAPACITY TO SUE—CATHOLIC BISHOP.—The Bishop of the Roman Catholic
Apostolic Church in Porto Rico is the head and representative of that church,
with all the necessary authority and powers for its government, and, there-
fore, with the capacity to sue in its name for the acknowledgment of an-
nuities belonging to it and to recover the interest thereon.

The facts are stated in the opinion.

*Messrs. E. Campillo* and *J. Martínez Dávila* for the ap-
pellant.

*Mr. E. Acuña* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the acknowledgment of certain an-
nuities and the collection of interest thereon. The action
was brought by Bishop Jones of the Catholic Church of Porto
Rico against the present owners of house No. 7 Cristo Street,
San Juan, P. R. The complaint was demurred to and the
demurrer was overruled. After a trial the district court
entered judgment in favor of the plaintiff for interest for a
period of five years, holding that as to any other interest
claimed the action was barred by limitation. From this judg-
ment defendant Alejandro Texidor took the present appeal.
We will consider the assignment of errors in its regular
order.

1. The appellant maintains that the trial court erred in
overruling the demurrer, because it does not appear from
the complaint that the annuities were created or acknowl-
edged in a public instrument, wherefore it is necessary to

conclude that the complaint does not state facts sufficient to constitute a cause of action.

It was alleged in the complaint that by a deed executed before notary Juan Basilio Núñez in the year 1841 Manuel Gerónimo González sold to Luis María Padial a two-story house on Santo Cristo Street, San Juan, for the sum of seven thousand *pesos* of the currency of that time, of which the purchaser paid to the vendor three thousand, four hundred and seventy-five *pesos,* retaining the remaining three thousand, five hundred and twenty-five *pesos* to respond for certain annuities and taxes for which the property was liable under several encumbrances which purchaser Padial agreed to acknowledge; that thereafter Padial complied with his agreement and acknowledged the following annuities, paying the interest thereon while he was the owner of the house: One hundred *pesos* to the chaplaincy held by Rev. Esteban de Castro; five hundred *pesos* belonging to the *Mesa Capitular;* six hundred and twenty-five *pesos* to the *Seminario Conciliar y Cátedra de San Ildefonso;* one hundred and fifty *pesos* to the *Hospital de Caridad de la Concepción;* one thousand one hundred *pesos* to the chaplaincy held by Rev. Tomás de Castro; seven hundred *pesos* to the Dominican Fathers, and three hundred and fifty *pesos* to the *Cofradía del Rosario;* that the house was sold and transferred to the several owners named until it came into the possession of the defendants, who acquired it by purchase from Josefa Bonilla París by a public deed of March 7, 1917; that in each sale the purchaser deducted from the purchase price the amount of the principal of the annuities, except only that granted to the Dominican Fathers, which passed to the Spanish Government by virtue of the *desvinculadoras* laws; that the owners of the house paid the interest on the annuities up to the dates mentioned, but the present owners and their vendor have refused to pay such interest notwithstanding the repeated demands for payment made by the plaintiff, and that the interest accrued and unpaid amounts to one thousand and

sixty *pesos,* Spanish money, which was the currency of the Island in the year 1841.

The complaint, therefore, does not expressly set forth that the encumbrances were acknowledged by Padial in a public instrument. The appellant contends that the law in force at that time required this, but he does not cite the law. The appellee denies the existence of such a law and challenges the appellant to produce it. The appellant has not done so and we have been unable to find it. This being so, and examining the facts set up in the complaint in the light of the old principle of law that ''in whatever way it may appear that a person wishes to bind himself, he is bound,'' we are of the opinion that the district court committed no error in overruling the demurrer of the defendant.

2. The second error assigned is that the court should have dismissed the complaint for lack of capacity of the plaintiff.

We have already said that the action was brought by Bishop Jones of the Catholic Church of Porto Rico, and we will now add that it was alleged in the complaint that the plaintiff ''is vested with all the necessary authority and powers for the government thereof, among them that of suing for the acknowledgment and declaration of rights in favor of the entities and institutions of the said Catholic Church of Porto Rico which operate under the direction of its Bishop, among which are the *Mesa Capitular del Cabildo Catedral,* the *Seminario Conciliar,* the *Hospital de la Concepción,* the *Archicofradía del Rosario* and the *Colecturía de Capellanías Vacantes.''* At the trial evidence was introduced to show that the plaintiff is at present the Bishop of the Catholic Church of Porto Rico.

This question has been considered and decided by this court unfavorably to the appellant. In the case of *Jones, Catholic Bishop of Porto Rico* v. *The Registrar of Property,* 17 P. R. R. 211, the court said:

''The representation of the Roman Catholic Apostolic Church in Porto Rico devolved upon its bishop during the Spanish sover-

eignty and the Treaty of Paris, entered into between the United
States and Spain, made no innovation whatever upon this particular,
but, on the contrary, it has recognized the rights of the Church, al-
though without establishing preferences with respect to other reli-
gions. Nay, more: After the approval, on March 10, 1904, of the
act conferring on this Supreme Court original jurisdiction for the
trial and adjudication of certain property claimed by the Roman
Catholic Church in Porto Rico, several actions were brought by the
Roman Catholic Bishop of Porto Rico, in representation of the
Church, claiming ownership of the Cathedral, the Conciliar Seminary,
several parochial churches, convents, and annuities which had be-
longed to religious communities and had been seized by the Royal
Treasury; and in all these cases the Roman Catholic Bishop of Porto
Rico was recognized as representative of the Church, it being worthy
of note that one of these cases, namely, that relating to the Ponce
church, was summarily decided in favor of the Catholic Bishop of
Porto Rico by the Supreme Court of the United States, while two
others were brought to an end by settlement pursuant to the joint
resolution approved September 16, 1908, in which settlement there
intervened representatives of the United States, of The People of
Porto Rico, and of the Roman Catholic Apostolic Church of Porto
Rico, represented by its bishop, whose representation was not chal-
lenged by the other parties.

"We are of the opinion, then, that the annuity-earning sums in
favor of the Conciliar Seminary, the Cathedral Foundation, the Va-
cant Chaplaincies, the Capitulary Rents, and the Charity Hospital
belong to the Roman Catholic Apostolic Church of Porto Rico;
wherefore, its legal representative, who is the bishop and whose
capacity cannot be questioned, had power to cancel the same, such
cancelation being effective, and hence admissible to record in the
registry."

See also the case of *Jones, Catholic Bishop* v. *Registrar*,
18 P. R. R. 124, and cases therein cited.

3. The third assignment by the appellant is that the court
erred in fixing the amount of the annuities and in determining
the persons in whose favor they were created. He main-
tains that the only annuities which, according to the evidence
examined, appeared recorded in the old Registry of Mort-
gages were those of one hundred *pesos* to the Chaplaincy of
Esteban de Castro, of five hundred *pesos* to the *Mesa Capi-*

*tular,* of six hundred and twenty-five *pesos* to the Dominican Fathers, of three hundred and fifty *pesos* to the *Cofradía del Rosario* and of one thousand, eight hundred and sixty *pesos* to attorney Sigardo, and that as the one to attorney Sigardo had been canceled and that to the Dominion Fathers extinguished, only the others remained and their actual validity in any event would depend on whether the owners thereof had transferred them to the books of the modern registry of property, which they had not done.

. The appellant is supported by a part of the evidence. Indeed, the certificate of the Recorder of Mortgages attached to the deed of 1841 bears out his statement. But there was also exhibited the record of a proceeding for the acknowledgment and issuance of a policy brought by Padial, on file in the Archives of the Eclesiastical Notarial Office, wherein there appears another certificate of the Recorder of Mortgages which contains the annuities specified in the complaint.

Nor is the appellant right in the second part of his assignment of errors. According to the registry, from the records of the several sales of the property in question it appears that the contracting parties fixed the purchase price and the purchaser retained a part of it as the principal of the annuities. And this court, in an administrative appeal involving the cancelation of these very annuities, said:

"In the case at bar, as sufficiently appears from the facts above outlined, the entry, cancelation of which is sought, was neither taken directly from the old books nor made by the registrar of his own motion, but was based squarely upon the deliberate, solemn and mutual acknowledgment of vendor and purchaser in the various instruments constituting the chain of title, beginning with the deed of 1871 and ending with that of March, 1917, the purchaser in each instance, including the present owner, having expressly reserved out of the purchase price an amount calculated to cover the outstanding liability represented by such annuity." *Texidor* v. *Registrar of San Juan,* 25 P. R. R. 818, 821.

4. The other errors assigned are those committed by the court in admitting in evidence a certain deed and the testi-

mony of Luis Rodríguez, and in not striking out the evidence offered with respect to the interest.

A. The deed in question was executed on May 24, 1882, before notary Guerra by Félix Benet Rivera and Monserrate Cabrera, setting forth in detail the annuities which encumbered house No. 7 Cristo Street. The said deed was not recorded in the registry and on this fact the defendant based his opposition.

If there was error it does not carry with it the reversal of the judgment below, for it did not prejudice the defendants. Apart from the said deed the judgment is sustained by the deed executed by Padial in 1841, by the subsequent detailed acknowledgment made by him and by the direct acknowledgments of the purchasers, including the defendants, upon retaining a part of the purchase price which represented the principal of the annuities encumbering the property acquired by them.

B. The appellant maintains that "the collection of an annuity is shown by the memorandum or statement given by the person paying the annuity to the annuitant, in accordance with section 1519 of the Civil Code" and that the court erred in admitting oral evidence in this case to prove that fact. In order to conclude that the appellant is mistaken, it is sufficient to read the section cited, as follows:

"The annuitant, at the time of the delivery of the receipt of any income, can oblige the person paying the annuity to give him a memorandum in which it may appear that the payment has been made."

As the appellee says in his brief, the section cited "confers merely an elective power upon the annuitant, which does not imply any manner of exclusiveness for the purpose of showing the payment of the interest on the annuities."

C. Nor did the court err in refusing to strike out that part of the testimony of Luis Rodríguez which referred to the collection of the interest on the annuities. Since the year 1915, the witness was the secretary of the board of accounts

of the Bishopric and as such was in a position to testify that payment had been vainly demanded of the defendants of the interest claimed in the suit.

For all of the foregoing we are of the opinion that the judgment below must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.